**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

EDGAR YERKANYAN,

Plaintiff,

v.

MTC FINANCIAL INC. DBA TRUSTEE CORPS., AND REAL TIME RESOLUTION, INC.

Defendants.

Case No.: 8:25-cv-00813-CBM-KES

**ORDER RE: PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

The matter before the Court is Plaintiff's ex parte application for a temporary restraining order ("TRO"). (Dkt. No. 2 ("Application").)

## I. BACKGROUND

This action arises from a Home Equity Line of Credit ("HELOC") loan Plaintiff obtained in 2005 to pay for his home at 10914 Hillhaven Avenue, Los Angeles, California 91042. (Dkt. No. 1 ("Compl."), ¶ 4.) In September 2005, Plaintiff obtained a HELOC loan for $73,400.00 from Countrywide Bank, N.A., which was secured by a Deed of Trust recorded on Plaintiff's home. (*Id.*; Dkt. Nos. 2-2 ("HELOC Loan Agreement"); 16-2, Ex. A ("Deed of Trust").) In addition to the HELOC loan, Plaintiff also obtained a primary mortgage. (Compl., ¶ 4.) The record before the Court indicates that Plaintiff made payments on the HELOC loan

up until July 2009. (Dkt. No. 22-1, Ex. M.) In 2011, Defendant Real Time Resolutions ("RTR") purchased the lien held by Countrywide Bank on Plaintiff's home. (*Id.*, ¶ 9.) In 2014, Plaintiff "fell on hard times" and filed for bankruptcy. (*Id.*, ¶ 6; *In re Yerkanyan*, No. 2:14-bk-30953-SK (C.D. Cal. Nov. 7, 2014).) During the bankruptcy proceedings, RTR filed a proof of claim stating the remaining amount on his HELOC loan was $95,470.68. (Dkt. No. 16-2, Ex. C ("Proof of Claim").) However, the bankruptcy case was later dismissed after Plaintiff failed to appear for examination. (Dkt. No. 11, *In re Yerkanyan* (C.D. Cal. Dec. 23, 2014).)

In July 2015, Plaintiff obtained a loan modification through the Home Affordable Modification Program ("HAMP"), which Plaintiff believed included his HELOC loan. (Compl., ¶ 6.)[1] Thus, Plaintiff believed that "he would have one payment obligation relating to his home moving forward," and accordingly "remained current on his first mortgage from that point on." (*Id.*, ¶ 7.) Plaintiff "received no communications at all regarding his HELOC" after the loan modification. (*Id.*, ¶ 8.) Plaintiff alleges that RTR "failed to send any notice" to Plaintiff of any outstanding amounts due on his HELOC or that Plaintiff was in default for "approximately 18 years," and that in 2023, Plaintiff received correspondence from RTR "demanding payment of $139,545.45." (*Id.*, ¶¶ 9-11, 13.) However, the record reflects that (1) in October 2015, an RTR representative called Plaintiff and informed him that he was 74 payments behind on the loan (*see* Dkt. No. 16-1 ("Trakhtenbroit Decl."), ¶ 11), and (2) RTR sent Plaintiff monthly statements detailing the amount owed on his HELOC loan from at least June 2018 through November 2024 (*see* Dkt. No. 22-1, Ex. K.)

---

[1] The Complaint alleges that Plaintiff obtained the loan modification in 2014—however, the loan modification agreement itself (Dkt. No. 20-2) indicates that the agreement was executed in July 2015.

In April 2023, RTR initiated foreclosure proceedings against Plaintiff's home and sent Plaintiff correspondence stating that Plaintiff owed $154,345.11 on his HELOC loan. (Compl., ¶¶ 15-16; Dkt. No. 16-2, Ex. F ("Notice of Default and Election to Sell").) In October 2024, a Notice of Trustee's Sale is recorded—the notice set a foreclosure sale date on November 5, 2024. (Dkt. No. 16-2, Ex. G.) Plaintiff then filed a state court action on October 30, 2024 for wrongful foreclosure of his home. (*See* Dkt. No. 1-1, *Yerkanyan v. MTC Financial Inc. et al.*, No. 2:25-cv-2963-CBM-KES (C.D. Cal. Apr. 4, 2025) ("*Yerkanyan I"*).) The next day, Plaintiff filed an ex parte application for TRO, seeking an injunction against Defendants MTC Financial Inc. (d/b/a Trustee Corps) and RTR from selling his home. (*Id.*, Dkt. No. 1-2.) On November 1, 2024, the state court continued the hearing on Plaintiff's application to December 4, 2024. (*Id.*, Dkt. No. 1-3.) On November 29, 2024, RTR filed an opposition to Plaintiff's application and on December 2, 2024, RTR filed a demurrer to the Complaint. (*Id.*, Dkt. Nos. 1-6, 1-8.) On December 4, 2024, the state court denied the application. (*Id.*, Dkt. No. 1-10.) RTR removed *Yerkanyan I* to this Court on April 4, 2025, after Plaintiff filed an amended complaint stating claims under federal law (*id.*, Dkt. No. 1), and Plaintiff filed an ex parte application for a temporary restraining order against the sale of his home. (*Id.*, Dkt. No. 3.) Before the Court could rule on the application, Plaintiff dismissed the action without prejudice. (*Id.*, Dkt. No. 10.)

On April 18, 2025, Plaintiff filed this action ("*Yerkanyan II*"), which appears identical to *Yerkanyan I*. (Dkt. No. 1.) The Complaint alleges violations of the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692e), the Rosenthal Fair Debt Collection Practices Act ("RFDCPA") (Cal. Civ. Code § 1788.17), the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq*), and claims for declaratory judgment and breach of implied covenant. Plaintiff's claims are based on RTR's alleged failure to comply with 12 C.F.R. § 1026.7 (Regulation Z of the

Truth in Lending Act ("TILA")). The claims are brought on behalf of putative classes. (*Id.*, ¶ 53.)

Plaintiff also filed an ex parte application for a temporary restraining order against the sale of his home (Dkt. No. 2), and the Court held a hearing on April 23, 2025. (Dkt. No. 19.) The Court ordered Plaintiff and Defendant to produce additional evidence (Dkt. Nos. 11, 21) and has now reviewed all evidence submitted by the parties.

## II. STATEMENT OF THE LAW

Ex parte relief is warranted when the evidence shows that "the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and "the moving party is without fault in creating the crisis that requires ex parte relief." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

"The standard for issuing a temporary restraining order is "substantially identical" to that for issuing a preliminary injunction." *Su v. L & Y Food, Inc.*, 728 F. Supp. 3d 1050, 1052 (C.D. Cal. 2024). A party seeking a preliminary injunction must demonstrate (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of injunctive relief, (3) the balance of equities is in its favor, and (4) injunctive relief is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Alternatively, in the Ninth Circuit, "a party is entitled to a preliminary injunction if it demonstrates (1) serious questions going to the merits, (2) a likelihood of irreparable injury," (3) a balance of hardships that tips sharply towards the plaintiff, and (4) the injunction is in the public interest." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (internal quotations and citations omitted). "As to the first factor, the serious questions standard is 'a lesser showing than likelihood of success on the merits.'" *Id.* (quoting *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017)). Therefore, "[t]he 'serious questions' standard permits a district court

to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1133 (9th Cir. 2011).

## III. DISCUSSION

### A. Ex Parte Relief

While it is clear to the Court that Plaintiff would suffer irreparable harm absent ex parte relief, it is not clear why Plaintiff delayed in bringing his initial suit. The Complaint alleges that RTR issued a Notice of Sale of the property after its initial communication to Plaintiff in 2023. Defendant submits a copy of the Notice of Default, which was recorded on April 7, 2023. (*See* Dkt. No. 16-2, Ex. F.) Plaintiff did not file *Yerkanyan I* until late October 2024. It is also unclear why Plaintiff delayed filing his amended complaint and second ex parte application in *Yerkanyan I* for almost four months after receiving the state court's order on his first ex parte application. Thus, it appears that Plaintiff is at least partly at fault in creating the emergency he now faces. Nonetheless, the Court examines the merits of Plaintiff's request for a preliminary injunction below.

### B. Likelihood of Success/Serious Questions as to the Merits

#### *1. FDCPA Claims*

Plaintiff brings claims under the FDCPA (§§ 1692e(2) and (10) and § 1692f) on the basis that RTR failed to provide him with periodic statements disclosing the fees and interests he owed on the loan, as required by the TILA. 15 U.S.C. § 1692e states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "(2) The false representation of . . . the character, amount, or legal status of any debt" and "(10) The use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692f states that a debt collector "may not

use unfair or unconscionable means to collect or attempt to collect any debt," including "(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."

12 C.F.R. § 1026.7 states that a creditor of home-equity plans "shall furnish the consumer with a periodic statement that discloses," among other things, the account balance outstanding at the beginning and the end of the billing cycle, the amount of any finance charge added to the account during the cycle, the periodic rate used to compute the finance charge, the amount of balance to which a periodic rate was applied, and the date by which the new balance or portion of balance must be paid to avoid additional finance charges.

Plaintiff declares that he purchased his home at 10914 Hillhaven Avenue, Los Angeles, CA 91042 in September 2005 and that it has been his family home for 19 years, where he, his wife, and his children reside. (Dkt. No. 2-1 ("Yerkanyan Decl."), ¶ c.) Plaintiff also declares that following his loan modification, he "never received any statements or written notices from Real Time Resolution, Inc., until the year 2023." (*Id.*, ¶ f.) In a supplemental declaration, Plaintiff declares that in June 2015, he entered into a loan modification for an original loan amount of $587,000, and that he assumed that this modification included both his primary mortgage and the HELOC loan.[2] (Dkt. No. 20-1 ("Supp. Yerkanyan Decl."), ¶ 3.)

However, RTR provides evidence that it has sent Plaintiff monthly statements detailing the amount owed on his HELOC loan from at least June 2018 through November 2024. (*See* Dkt. No. 22-1, Ex. K.) These statements were sent to

---

[2] At the hearing on the Application, Plaintiff's counsel conceded that the loan modification agreement only applied to Plaintiff's primary mortgage, not the HELOC loan.

Plaintiff at his Hillhaven home address until July 25, 2023; from August 2023 onward, RTR sent the statements to Plaintiff's counsel (the same counsel in this action). (*Id.*) Corporate counsel for RTR (Trakhtenbroit) declares that RTR began sending the statements to Plaintiff's counsel at Plaintiff's request. (Dkt. No. 22 ("Supp. Trakhtenbroit Decl."), ¶ 5.) The statements clearly lay out the outstanding principal, the interest rate, the interest accrued during the monthly billing cycle, a calculation of how the daily periodic rate of interest and number of days resulted in the interest amount charged, the interest finance charges, the amounts paid by Plaintiff since the last cycle ($0), and the total amount due at the end of the billing cycle. (*See, e.g.*, Ex. K at 310 (June 1, 2018 Account Statement).) The statements also include a "Delinquency Notice" informing Plaintiff that he was late on his account payments, when his account became delinquent (July 2009), how many days he had been delinquent, and the total amount Plaintiff needed to pay to "bring [his] account contractually current." (*Id.* at 312.)

Thus, contrary to Plaintiff's declaration and the allegations in the Complaint, RTR provided Plaintiff with periodic statements as required by the TILA from at least June 2018 to November 2024. RTR's obligation to provide periodic statements terminated once the Notice of Default was recorded on April 7, 2023 (Dkt. No. 16-2, Ex. F ("Notice of Default").). *See* 12 C.F.R. 1026.5(b)(2)(i) ("A periodic statement need not be sent for an account . . . if delinquency collection proceedings have been instituted"). Therefore, Plaintiff has no basis for an FDCPA claim based on any lack of periodic statements from June 2018 to present-day.

To be sure, RTR has not provided evidence that it sent any periodic statements to Plaintiff from August 2009 through May 2018, a period spanning almost 9 years. But any claims Plaintiff had for failure to send notices from 2009 to mid-2018 are now time-barred under the FDCPA, which requires any consumer claims to be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692(k). Nor does any equitable tolling apply here. Equitable tolling

only "applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *McGaughey v. PNP Mgmt. Servs., VII, LLC*, 2019 WL 7938448, at *2 (C.D. Cal. Nov. 12, 2019) (internal quotations omitted). Even if Plaintiff believed that his 2010 loan modification covered the HELOC loan and Defendants failed to provide any notice suggesting otherwise between 2009 and 2018, he began receiving periodic statements starting in June 2018. At that point, Plaintiff was on notice of any potential claims for failure to provide periodic statements between 2009 and 2018, and there is no evidence that he was prevented from then asserting a claim due to extraordinary circumstances. Thus, any equitable tolling would have only tolled the claims until June 2018, and Plaintiff would have needed to file those claims by June 2019. He did not file *Yerkanyan I* until October 2024.

In his reply, Plaintiff advances a new argument that the alleged violation was a payoff statement dated March 5, 2025, which is within the FDCPA's statute of limitations. (Dkt. No. 20 at 3.) Plaintiff argues that the March 2025 statement violates the FDCPA because it "overstated the interest that could have accrued from April 2023 to April 2025." (*Id.*) Plaintiff provides a declaration from Norvan Mardirosian, a certified public accountant, in which Mardirosian declares that the amount due in the March 31, 2023 account statement is inconsistent with the total payoff amount in the March 5, 2025 payoff statement. (Dkt. No. 20-5.) However, the Supplemental Trakhtenbroit Declaration explains that the amount due in the March 2023 account statement was the amount Plaintiff needed to pay to bring the HELOC loan current, whereas the March 2025 payoff statement stated the total amount needed for Plaintiff to pay off the entire loan.[3] (Supp. Trakhtenbroit Decl., ¶¶ 6-7.)

---

[3] Trakhtenbroit declares that this includes unamortized principal amounts that are not yet due and that the loan matures in 2030. (*Id.*, ¶ 7.)

The Court has reviewed the evidence and finds that the March 5, 2025 payoff statement is consistent with Plaintiff having made no payments on the HELOC loan since July 2009 and does not overstate the total interest owed. Plaintiff confuses the difference between the total amount due on an account statement, which reflects the amount needed *to bring the account current*, with the total payoff amounts on a payoff statement, which reflects the amount needed to *pay off the loan entirely*. The account statements from June 2018 to November 2024 make this clear—the November 2024 account statement reflects that to bring the account current, Plaintiff needed to pay $121,706.83. (*See* Dkt. No. 22-1, Ex. K at 2.) The March 2025 payoff statement reflects that to pay off the loan entirely, Plaintiff would need to pay $154,345.11—*i.e.*, $121,706.83, plus interest accrued between November 2024 and March 2025 (and finance charges or fees incurred as detailed in the statement), plus the unamortized principal amount scheduled to be due between April 2025 and the end of the repayment period in 2030. (*See* Dkt. No. 20-8.)

The total interest owed is also supported by the Proof of Claim RTR filed in Plaintiff's 2014 bankruptcy action, *In re Yerkanyan*, Case No. 2:14-bk-30953-SK (Bankr. C.D. Cal. Nov. 7, 2014). (*See* Dkt. No. 16-2, Ex. C.) Filed in December 2014, the claim stated that Plaintiff owed $21,663.68 in interest accrued between July 2009 and October 2014. (*Id.*) The claim includes a breakdown of all payments owed (but not paid) on the loan from August 2009 through October 2014 and also noted that the entirety of the principal was still outstanding. (*Id.*) The March 2025 payoff statement reflects that the total interest accrued is now $76,615.09. (Dkt. No. 20-8.) In other words, between November 2014 and March 2025, the loan accrued additional interest of $54,951.41. Because the HELOC loan is an adjustable-rate loan (*see* Dkt. No. 2-2 ("HELOC Agreement"), § 6), the interest accrued varied from month to month. Since there is no evidence in the record of the interest accrued between November 2014 and June 2018, the Court cannot be sure of how much interest accrued in that timeframe. However, the amount accrued

between November 2014 and March 2025 generally appears in line with the amount accrued between August 2009 and October 2014.

Finally, RTR also submits evidence listing all payments Plaintiff did make on the loan from the loan origination date to July 31, 2009. (Dkt. No. 22-1, Ex. M.) This record shows that the payments Plaintiff made on the loan to date were applied towards paying the interest off and thus explains why Plaintiff still owes the entirety of the principal amount today.

In sum, Plaintiff has not shown how the March 5, 2025 payoff statement (or any of the other statements in the record) failed to comply with the TILA or how RTR otherwise violated the FDCPA. The record indicates Defendants have sent periodic statements informing Plaintiff of his delinquency on the HELOC loan for years, as required by the TILA, yet Plaintiff has continued to fail to make any payments on the loan. Without a violation of the TILA that is not time-barred, Plaintiff has no basis for his FDCPA claims. Accordingly, Plaintiff has shown neither a likelihood of success nor serious questions as to the merits of these claims. *See Greeson v. Quicken Loans Inc.*, 2022 WL 4091673, at *1 (N.D. Cal. Sept. 7, 2022) (denying application for temporary restraining order related to TILA claims because the plaintiffs "are not currently facing foreclosure because the bank failed to send them any required periodic statements; they are facing foreclosure because they have not made any payments on their home since 2008.").

*2. RFDCPA Claims*

California Civil Code § 1788.17 states that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code." As discussed above, Plaintiff fails to show that the March 2025 payoff statement violates the FDCPA. For the

same reasons, he also fails to show a likelihood of success or serious questions as to the merits of his RFDCPA claims.[4]

*3. UCL Claims*

Plaintiff also argues he is likely to prevail on his UCL claim, which is alleged under the unfair, unlawful, and fraudulent prongs. (Compl., ¶¶ 89-100.) Plaintiff argues "a false representation of the amount or legal status of a debt could be considered fraudulent under the UCL, as it is likely to deceive consumers," and that the failure to provide accurate monthly statements could also serve as a predicate for his UCL claim. (Dkt. No. 20 at 7–8.)

"A UCL claim under the 'unlawful' prong 'borrows violations of other laws and treats' them as unlawful business practices 'independently actionable under section 17200.'" *Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 864–65 (C.D. Cal. 2022). Because Plaintiff has not shown a likelihood of success on his predicate FDCPA or Rosenthal Act claims, Plaintiff likewise fails to show a likelihood of success on the UCL claim under the "unlawful" prong.

Under the "unfair prong," courts analyze "(1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law, (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer." *Nazemi*, 637 F. Supp. 3d at 864 (internal quotations omitted). The Court finds that Plaintiff has not shown that he is likely to succeed under the "unfair" prong based on the March 2025 payoff statement. Further, any claim based

[4] The continuing violation doctrine does not save this claim—for the doctrine to apply, there must be unlawful conduct that occurred within the statute of limitations. *See Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 344 (2009). Here, there is no evidence of unlawful conduct occurring within one year of either this case or *Yerkanyan I*.

on the lack of periodic statements before June 2018 are time-barred. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) ("UCL claims are subject to a four-year statute of limitations"); Cal. Bus. & Prof. Code § 17208.

Because there is no evidence that RTR's periodic statements or payoff statements contained any fraudulent information, Plaintiff has not shown he is likely to succeed under the "fraudulent" prong.

Accordingly, Plaintiff has not shown a likelihood of success or serious questions as to the merits of his UCL claim.

**C. Irreparable Harm, Balance of Equities, and Public Interest**

Where a plaintiff is "unlikely to succeed on the merits, [] injunctive relief would not normally be granted." *F.T.C. v. Simeon Mgmt. Corp.*, 532 F.2d 708, 717 (9th Cir. 1976). While Plaintiff risks losing his family home in the absence of an injunction, since the evidence at this stage indicates Plaintiff does owe the amount RTR has tried to collect and has failed to make any payments on the loan since 2009, the Court finds that the balance of equities and the public interest weigh against granting the Application.

## IV. CONCLUSION

Accordingly, Plaintiff's Application for TRO is **DENIED**. The Court understands that the parties have attempted but so far failed to settle the outstanding loan amount so that a foreclosure sale can be avoided and Plaintiff can remain in his home. (See Trakhtenbroit Decl., ¶ 16 & Ex. H; Supp. Yerkanyan Decl., ¶ 6-9 & Exs. F-G.) At the hearing, Plaintiff's counsel requested that, in the event the Court denies the Application, the foreclosure date be set "further out" so that Plaintiff may try to acquire a loan to settle the outstanding debt on his HELOC loan. In light of the fact that Plaintiff currently lives in the home with his family, the Court hereby **ORDERS** that, **no later than June 10, 2025**, the parties (1) shall meet and confer regarding potential settlement of the loan through mediation with the magistrate judge assigned to this case or any active magistrate judge in this district,

and (2) file Form ADR-01 indicating which option the parties have selected. The Court **ORDERS** that any foreclosure sale shall not take place before the parties have engaged in mediation with a magistrate judge.

RTR also filed a motion to dismiss the Complaint after the hearing on Plaintiff's Application for a TRO. (Dkt. No. 24.) In light of the Court's order above, the hearing on RTR's motion is hereby **VACATED**. Once a settlement conference is scheduled, the parties shall file a joint status report informing the Court of the settlement conference date. After the parties complete mediation, the parties shall file a joint status report informing the Court of the outcome and whether the Court needs to reset the hearing date for RTR's motion to dismiss.

**IT IS SO ORDERED.**

DATED: May 30, 2025

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE